1   DREIER STEIN KAHAN
2      BROWNE WOODS GEORGE LLP
    Eric M. George (No. 166403)
    David L. Zifkin (No. 232845)
3   Fox Plaza, 2121 Avenue of the Stars, 24th Floor
    Los Angeles, CA 90067
4   Telephone: 310.274.7100
    Facsimile: 310.275.5697
5   Email: egeorge@dskbwg.com

6   DREIER LLP
    Lee A. Weiss
7   (Application pending for admission *pro hac vice*)
    499 Park Avenue
8   New York, NY 10022
    Telephone: (212) 328-6100
9   Facsimile: (212) 328-6101
    Email: lweiss@dreierllp.com

10
    Attorneys for Plaintiff Halsey Minor and all others
11  similarly situated

12                    UNITED STATES DISTRICT COURT

13          NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14

15  HALSEY MINOR, individually and on          CASE NO.    C 08 4568
16  behalf of all others similarly situated,
                                               CLASS ACTION COMPLAINT
17                          Plaintiffs,

18          vs.
                                               JURY TRIAL DEMANDED
19  SOTHEBY'S, INC.,

20                          Defendant.

21

22

23

24

25

26

27

28

209636_1.DOC

Dockets.Justia.com

1    Plaintiff Halsey Minor, individually and on behalf of all others similarly situated, by and

2    through the undersigned attorneys, hereby asserts the following allegations:

3    ## INTRODUCTION

4    1.    This action is brought pursuant to New York General Business Law § 349 and

5    other common law in effect.  Plaintiff Halsey Minor, individually and on behalf of all others

6    similarly situated, seeks to put an end to – and to obtain redress from – a custom of deception

7    practiced by Sotheby's, Inc. ("Sotheby's" or "defendant"), the largest fine art auctioneer in the

8    world, with over 100 offices worldwide, upon its bidder clients.

9    2.    In a scheme to boost its own profits, and in violation of common law and statutory

10   duties mandating disclosure, Sotheby's actively conceals information concerning its own

11   significant economic interests in property that it places at auction.  This property includes but is

12   not limited to artwork, real property, books and manuscripts, furniture and decorative arts,

13   jewelry, musical instruments, collectibles and memorabilia, photographs, prints, silver, stamps,

14   coins, medals, watches and clocks, fashion and wine (the various categories of property that

15   Sotheby's places at auction are referred to herein as "auctioned property").    Through this

16   deception and concealment, Sotheby's intentionally deceives its clients into bidding more for

17   auctioned property than they otherwise would have, and more than Sotheby's believes the

18   property to be worth, thereby maximizing Sotheby's economic return or, as the case may be,

19   maximizing the reduction in the amount of receivables held by Sotheby's.  Yet further, the

20   inflated winning bid prices enable Sotheby's to obtain higher fees from the successful bidders.

21   3.    Plaintiff is one of the many victims of this scheme.  In May 2008, he was the

22   successful bidder at a Sotheby's auction of the painting "The Peaceable Kingdom with the

23   Leopard of Serenity" (hereafter, "the Peaceable Kingdom"), Unbeknownst to plaintiff and other

24   prospective bidders at the auction, Sotheby's had an economic interest in the Peaceable Kingdom

25   due to its owner's failure to pay certain amounts owed to Sotheby's.

26   4.    Mr. Minor made the bid largely on the advice of Sotheby's Executive Vice

27   President and Director of the American Paintings Department, who agreed to be, and acted as,

28   plaintiff's art consultant and purchasing agent.   Yet Sotheby's never revealed to plaintiff that it

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

1    maintained a direct economic interest in that painting. To the contrary, during all of their
2    conversations prior to the May 22, 2008 auction, Sotheby's concealed from plaintiff that it had a
3    direct economic interest in the Peaceable Kingdom. Then, following the auction, plaintiff learned
4    that his winning bid of $8.6 million (exclusive of buyer's premium and Sotheby's commission)
5    was (a) insufficient to satisfy the seller's indebtedness to Sotheby's, and (b) grossly exceeded the
6    figure at which Sotheby's had internally (and secretly) valued the artwork. Betraying the
7    confidence and trust plaintiff had placed in its integrity and fidelity as a disinterested auction
8    house, Sotheby's had disguised itself as a sincere and honest art adviser to plaintiff, while in
9    reality acted as a self-profiteer.

10    5.    This improper conduct irrevocably taints the auction process and flouts statutory
11    and common law, and is undertaken by Sotheby's to enrich itself at the expense of plaintiff and
12    other class members. By concealing information concerning its economic interests in auctioned
13    property, Sotheby's has endeavored to deprive plaintiff and other class members – as well as
14    unsuccessful bidders – of the benefit of information necessary to assess a fair price at which to
15    bid. Absent the disclosure of information concerning all economic interests held by Sotheby's in
16    auctioned property – including the amount and terms of the indebtedness, as well as the identity
17    of the counter-party debtor – a bidder is made ignorant as to whether Sotheby's has an incentive
18    to overstate the quality or importance of property in order to (i) recoup monies that Sotheby's is
19    owed by a debtor client, or (ii) to eliminate the risk that Sotheby's may never collect moneys from
20    a debtor client whose sole collateral is in the property auctioned. By concealing information
21    concerning its economic interests, Sotheby's may favor one item of auctioned property (in which
22    Sotheby's holds an economic interest) over another (in which it does not), without providing a
23    bidder with the information necessary to make his or her own judgment in the matter.

24    6.    By this action, plaintiff seeks, among other forms of relief: (i) a preliminary and
25    permanent injunction requiring disclosure by Sotheby's, in its auction catalogs, of all economic
26    interests Sotheby's holds in any auctioned property other than disclosed fees and/or buyer
27    commissions; (ii) a preliminary and permanent injunction requiring disclosure by Sotheby's, in its
28    auction catalogs, of the identities of all counter-parties whose indebtedness to Sotheby's has

209636_1.DOC                                         -2-

resulted in an economic interest being held by Sotheby's in the auctioned property; (iii) disgorgement to plaintiff and other class members of a sum determined to reflect the premium received by Sotheby's for property auctioned by Sotheby's during the Class Period (as defined below) where Sotheby's concealed information concerning the economic interests it held in the auctioned property, plus increased fees received by Sotheby's due to the inflated auction prices; and (iv) damages for Sotheby's wrongful conduct.

## THE PARTIES

7.     Plaintiff Halsey Minor resides in San Francisco, California and is a citizen of California for diversity jurisdiction purposes because he is domiciled in California and has no intention of changing his domicile.

8.     On information and belief, defendant Sotheby's is a New York corporation with its principal place of business located at 1334 York Avenue, New York, New York. Thus, for diversity jurisdiction purposes, Sotheby's is a citizen of New York.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of a state different from any defendant. Further, upon information and belief greater than two-thirds of the plaintiff Class are citizens of states other than California.

10.    The total number of all members of the proposed class exceeds 100.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including many of defendant's communications with plaintiff, occurred within this District.

## CLASS ACTION ALLEGATIONS

12.    Plaintiff brings this action on behalf of himself, and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), and 23(b), and the case law thereunder. The class plaintiff seeks to represent consists of all persons who purchased property at auctions conducted by Sotheby's, in which Sotheby's held any economic interest in the

auctioned property other than disclosed fees and/or buyer commissions (the "Class"), within the six year period preceding the filing of plaintiff's complaint through the date notice is mailed to the Class (the "Class Period"). Excluded from the Class are defendant's employees, officers, directors, agents, representatives, and their family members.

13. Plaintiff reserves the right to amend or otherwise alter the definition of the Class presented to the Court at the appropriate time, or to propose sub-Classes in response to facts learned through discovery, legal arguments advanced by defendant or otherwise.

14. Numerosity: The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class members is unknown at this time, plaintiff is informed and believes that the Class consists of thousands of members.

15. Commonality: Common questions of law or fact are shared by members of the Class. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

(a) Whether Sotheby's auctioned and sold property without disclosing information concerning its economic interests in that property;

(b) Whether Sotheby's had a duty to disclose information concerning its economic interests in auctioned property;

(c) Whether Sotheby's pursued the common course of conduct complained of herein;

(d) Whether the failure of Sotheby's to disclose information concerning its economic interests in auctioned property constitutes an unfair or deceptive consumer sales practice;

(e) Whether Sotheby's was unjustly enriched; and

(f) Whether the Class is entitled to injunctive relief.

16. Typicality: Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiff and Class members are based on the same legal theories.

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

209636_1.DOC                                    -4-

17. Adequacy: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other members of the Class plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and plaintiff intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by plaintiff and his counsel.

18. Ascertainable Class: The proposed Class is ascertainable in that the members can be identified and located using information contained in defendant's records.

19. This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

(a) Risk of Inconsistent Judgments: The unlawful acts and practices of defendant, as alleged herein, constitute a course of conduct common to plaintiff and each Class member. Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendant and/or substantially impair or impede the ability of individual Class members to protect their interests;

(b) Injunctive and/or Declaratory Relief to the Class is Appropriate: Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

(c) Predominant Questions of Law or Fact: Questions of law or fact common to Class members, including those identified above, predominate over questions affecting only individual Class members, if any, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Further, an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudicating each such individual lawsuit would be substantial.

20.     Sotheby's is the largest fine art auctioneer in the world, with over 100 offices worldwide. In its 2007 10-K, Sotheby's states as follows:

> The Company's principal role as an auctioneer is to identify, evaluate and appraise works of art through its international staff of specialists; to stimulate purchaser interest through professional marketing techniques; and to match sellers and buyers through the auction process.
>
> In its role as auctioneer, the Company principally functions as an agent accepting property on consignment from its selling clients. The Company sells property as agent of the consignor, billing the buyer for property purchased, receiving payment from the buyer and remitting to the consignor the consignor's portion of the buyer's payment after deducting the Company's commissions, expenses and applicable taxes and royalties. The Company's action commissions include those earned from the buyer ("buyer's premium") and those earned form the consignor ("seller's commission"), both of which are calculated as a percentage of the hammer price of property sold at auction.

21.     This action does not concern fees (including commissions) received by Sotheby's that were disclosed to potential buyers, but instead targets defendant's practice of taking – and concealing information from potential buyers concerning – economic interests in its seller-clients' auctioned property prior to auction.

22.     Plaintiff, a collector of art who on multiple occasions has purchased art at Sotheby's auctions, is one of the many victims of defendant's unlawful practice. At no time during or preceding the auction did Sotheby's ever disclose to plaintiff that Sotheby's held any economic interest in the artwork.

23.     During the course of his relationship with Sotheby's, plaintiff became acquainted with Dara Mitchell, who is employed by Sotheby's as an Executive Vice President and Director of the American Paintings Department.

24.     In February 2008, plaintiff informed Ms. Mitchell that he intended to collect American art on a going forward basis, and sought – and received – her advice and expertise as an American art specialist. Ms. Mitchell agreed to – and did – advise plaintiff about American art generally, and her advice was not limited to pieces auctioned by Sotheby's.

25.     In February 2008, Ms. Mitchell introduced plaintiff to a particular painting by the American folk artist Edward Hicks, entitled "The Peaceable Kingdom."

26.     Unbeknownst to plaintiff at this time, and at any time prior to the eventual May 22, 2008 auction of the painting, Sotheby's was – on information and belief – owed large sums of money by jeweler and art collector Ralph Esmerian, and this debt was secured by works of art belonging to Mr. Esmerian, including the Peaceable Kingdom.

27.     On information and belief, by 2005, Mr. Esmerian had begun to default on his obligations to a number of creditors. And by January 2008, at least two of Mr. Esmerian's creditors – Merrill Lynch Mortgage Capital, Inc. and Christie's, Inc. – had filed suit against Mr. Esmerian seeking payment of the debts owed to them.

28.     On information and belief, Sotheby's intended to retain the proceeds from the sale of the Peaceable Kingdom in order to reduce or, ideally, eliminate the debt Mr. Esmerian owed to Sotheby's.

29.     In February 2008, Sotheby's had attempted, but failed, to sell the Peaceable Kingdom at a private sale. Thus, in March 2008, Sotheby's announced that it intended to sell the work at its spring auction, scheduled to take place on May 22, 2008.

30.     Sotheby's catalog for the May 22, 2008 auction did not disclose its economic interest in the Peaceable Kingdom.

31.     Plaintiff did not attend the May 22, 2008 auction of the Peaceable Kingdom. Instead, Ms. Mitchell relayed information to plaintiff on the progress of the auction by phone, and then bid on plaintiff's behalf.

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

1    32.    Plaintiff was the highest bidder for the Peaceable Kingdom, with a bid of $8.6
2    million (exclusive of Sotheby's fees and a buyer's premium).

3    33.    At no time did any Sotheby's employee or agent disclose to plaintiff the economic
4    interest held by Sotheby's in the Peaceable Kingdom. Nor did any of the printed materials
5    transmitted to plaintiff by Ms. Mitchell and Sotheby's indicate that Sotheby's possessed any such
6    interest.

7    34.    Shortly following the auction, plaintiff learned of Sotheby's economic interest in
8    the Peaceable Kingdom. Recognizing the auction process had been irrevocably tainted, and that
9    his winning bid had been artificially inflated, plaintiff elected to withhold payment on that work.
10   Given the possibility that other works for which he had placed the winning bid at that auction
11   might have been similarly tainted, plaintiff also withheld payment on those works.

12   35.    Sotheby's thereafter filed a breach of contract complaint in the United States
13   District Court for the Southern District of New York ("SDNY") seeking the entire amount of
14   plaintiff's winning bid for the Peaceable Kingdom, plus its fees. Plaintiff answered the SDNY
15   complaint and asserted a counterclaim for reformation of his contract with Sotheby's. Sotheby's
16   has not yet responded to the counterclaim.

17   36.    By this action, plaintiff seeks damages on behalf of himself and the other Class
18   members, along with injunctive relief to require Sotheby's to disclose information concerning all
19   economic interests held by Sotheby's in auctioned property.

20                                            **COUNT I**

21   **(Deceptive Practices) [N.Y. Gen. Bus. Law § 349 for injunctive relief and damages]**

22   **(Halsey Minor, Individually and on Behalf of All Others Similarly Situated)**

23   37.    Plaintiff repeats and incorporates by reference the allegations set forth in
24   paragraphs 1 through 36 of this Complaint as if fully set forth at length herein.

25   38.    Sotheby's is an auction house that engages in consumer-oriented acts and practices
26   – namely, the sale of property.

27   39.    On information and belief, since at least the beginning of the Class Period
28   Sotheby's has held economic interests in auctioned property, other than fees and/or buyer

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

1 commissions, that it has concealed from plaintiff and the other Class members.

2     40.     Sotheby's has common law and statutory duties to disclose information concerning

3 any economic interest it has in property it places at auction. For example, 6 RCNY §2-122(d),

4 governing auctioneers, states, in relevant part that:

5                 If an auctioneer or public salesroom has any interest, direct or

6                 indirect, in an article, including a guaranteed minimum, other than

7                 the selling commission, the fact such interest exists must be

8                 disclosed in connection with any description of the article or

9                 articles in the catalogue or any other printed material published or

10                 distributed in relation to the sale. Such notice may be denoted by a

11                 symbol or letter which will refer the reader to an explanation of the

12                 nature of the interest the symbol or letter denotes.

13     41.     Sotheby's catalog for the May 22, 2008 auction at which plaintiff purchased the

14 Peaceable Kingdom contains the vague and limited description that:

15                 $\Delta$ Property in which Sotheby's has an ownership interest

16                 Lots with this symbol indicate that Sotheby's owns the lot in whole

17                 or in part or has an economic interest in the lot equivalent to an

18                 ownership interest.

19 The foregoing statement by Sotheby's does not comport with the disclosure requirements

20 mandated by law. Nor, in any event, did Sotheby's affix the $\Delta$ symbol next to the Peaceable

21 Kingdom lot in its May 22, 2008 auction catalog.

22     42.     In contrast, a May 21, 2008 catalog from Sotheby's competitor, Christie's, well

23 illustrates the type of detailed disclosures required by law:

24             CHRISTIE'S INTEREST IN PROPERTY

25             CONSIGNED FOR AUCTION

26             From time to time, Christie's may offer a lot which it owns in whole

27             or in part. Such property is identified in the catalogue with the

28             symbol $\Delta$ next to its lot number.

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

CLASS ACTION COMPLAINT

On occasion, Christie's has a direct financial interest in lots consigned for sale which may include guaranteeing a minimum price or making an advance to the consignor that is secured solely by consigned property. Such property is identified in the catalogue by the symbol ° next to the lot number. This symbol will be used both in cases where Christie's holds the financial interest on its own, and in cases where Christie's has financed all or a part of such interest through a third party. Such third parties generally benefit financially if a guaranteed lot is sold successfully and may incur a loss if the sale is not successful. The financing offered by a third party may be in the form of an irrevocable bid provided by that third party.

43.     By failing to disclose information concerning its economic interests in the auctioned property throughout the Class Period, Sotheby's engaged in material, deceptive, consumer-oriented acts in the conduct of its business that injured plaintiff and the other Class members in violation of N.Y. Gen. Bus. §349.

44.     Had Sotheby's properly disclosed to plaintiff and Class members, as well as other potential purchasers of auctioned property, information concerning Sotheby's economic interests in the auctioned property, plaintiff and the other Class members would have been able to purchase the auctioned property for lower prices than they actually paid.

45.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit defendant from continuing to engage in the material, deceptive, consumer-oriented acts complained of herein. Such misconduct by defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that defendant will continue to violate the laws of New York, unless specifically ordered to comply with the same. This expectation of future violations will require current and future bidders at Sotheby's auctions to repeatedly and continuously seek legal redress in order to recoup monies paid to Sotheby's to which Sotheby's are not entitled. Plaintiff and the

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

209636_1.DOC                                                    -10-

1  other Class members and/or other consumers nationwide have no other adequate remedy at law to
2  ensure future compliance with the provisions of Gen. Bus. §349 alleged to have been violated
3  herein.

4      46.    Specifically, plaintiff seeks a preliminary and permanent injunction requiring
5  disclosure by Sotheby's, in its auction catalogs, of (a) information concerning all economic
6  interests Sotheby's holds in any auctioned property other than disclosed fees and/or buyer
7  commissions; and (b) the identities of all counter-parties whose indebtedness to Sotheby's has
8  resulted in an economic interest being held by Sotheby's in auctioned property.

9      47.    As a direct and proximate cause of defendant's violation of N.Y. Gen. Bus. §349,
10  plaintiff and the other Class members have been damaged in an amount that will be proven at
11  trial.

12  <center>**COUNT II**</center>

13  <center>**(UNJUST ENRICHMENT)**</center>

14  <center>**(Halsey Minor, Individually and on Behalf of All Others Similarly Situated)**</center>

15      48.    Plaintiff realleges and incorporates by reference the allegations set forth in
16  paragraphs 1 through 47 of this Complaint as if fully set forth at length herein.

17      49.    As a result of Sotheby's failure to disclose information concerning its economic
18  interests in auctioned property, defendant was enriched at the expense of plaintiff and the other
19  Class members through inflated auction prices and the resulting inflated buyers' fees.

20      50.    Under the circumstances, it would be against equity and good conscience to permit
21  Sotheby's to retain the ill-gotten benefits it received from plaintiff and the other Class members in
22  light of the fact that Sotheby's never disclosed information concerning its economic interests in
23  auctioned property purchased by plaintiff and the other Class members. Thus, it would be unjust
24  or inequitable for Sotheby's to retain the benefits without restitution to plaintiff and the other
25  Class members for the sums unjustly obtained by Sotheby's as a result of its unlawful conduct.

26

27

28

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

209636_1.DOC     -11-

## (BREACH OF FIDUCIARY DUTY)

### (Halsey Minor, Individually)

51. Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 50 of this Complaint as if fully set forth at length herein.

52. Beginning in February 2008, Ms. Mitchell advised plaintiff on various pieces of American Art, including offering advice, *inter alia*, regarding the present value and condition of certain works, the distinctiveness of certain works within the art collecting community, the likelihood of certain works to appreciate in value over time, and the investment opportunity presented by certain works. In addition, Ms. Mitchell agreed to – and did – negotiate with dealers and sellers – irrespective of their relationship to Sotheby's – on plaintiff's behalf for the purchase of certain works.

53. By her conduct and actions, Ms. Mitchell agreed to be, and acted as, plaintiff's art consultant and purchasing agent. She did so within the scope of her employment with Sotheby's, in an effort to maintain a relationship with an art collector interested in significant pieces. Plaintiff therefore trusted Ms. Mitchell, and relied on her to provide him with honest advice in his dealings in the art market.

54. For example, on February 23, 2008, plaintiff contacted Ms. Mitchell, seeking her "particular expertise in valuing" a painting in which he was interested. This painting was not being sold by Sotheby's, but instead by another art dealer. Plaintiff also asked Ms. Mitchell to inform him of any "interesting" paintings that might be available in Sotheby's May 2008 auction. Ms. Mitchell responded that she would be "happy to give [him] some help."

55. Similarly, on March 3, 2008, plaintiff sought Ms. Mitchell's opinion on another painting he was considering purchasing. Again, this painting was not being sold by Sotheby's, but instead by another dealer. Ms. Mitchell responded that the painting had been "knocking around for some time," and was "not a smart picture for [Plaintiff Minor] to be honest."

56. Additionally, from February through April 2008, Ms. Mitchell repeatedly praised The Peaceable Kingdom, encouraged plaintiff to purchase it, and endeavored to create an above-

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

market price range for the piece.

57.     For example, in separate emails on February 27, 2008, Ms. Mitchell advised plaintiff that the Peaceable Kingdom had failed to sell for $10,000,000 at a private sale that month, and that plaintiff was "going to love" the Peaceable Kingdom.

58.     In early March 2008, Ms. Mitchell sent plaintiff materials regarding the Peaceable Kingdom. And on March 11, 2008, she e-mailed plaintiff to ask "what [he] thought" of the work.

59.     On April 22, 2008, Ms. Mitchell again emailed plaintiff regarding the Peaceable Kingdom, stating: "By the way, I think the Hicks will sell, because the reserve is reasonable and there is quite a bit of interest. Also of all the ones that will be available this spring and next fall, it is clearly the best."

60.     Sotheby's took on obligations to plaintiff beyond those of an independent auction house or traditional middleman when engaged as art consultant and purchasing agent.

61.     Plaintiff reposed trust and confidence in the integrity and fidelity of Sotheby's to provide him with honest advice regarding his art purchases.

62.     During all of their conversations prior to the May 22, 2008 auction, Ms. Mitchell concealed from plaintiff that Sotheby's had a direct economic interest in the Peaceable Kingdom.

63.     Sotheby's breached its fiduciary duty to plaintiff by intentionally and in bad faith concealing from plaintiff information concerning its economic interest in the auctioned property.

64.     But for the breach of fiduciary duty by Sotheby's, plaintiff would have paid less to purchase the property for which plaintiff successfully bid.

65.     As a direct and proximate result of defendant's breach of its fiduciary duty, plaintiff has been damaged in an amount that will be proven at trial.

<div align="center">

**COUNT IV**

**(FRAUD)**

**(Halsey Minor, Individually and on Behalf of All Others Similarly Situated)**

</div>

66.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 65 of this Complaint as if fully set forth at length herein.

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

67. On information and belief, throughout the Class Period, Sotheby's has held economic interests in auctioned property, other than fees and/or buyer commissions, that it has concealed from plaintiff and the other Class members, and other bidders and potential bidders for auctioned property.

68. Under statutory and common law, Sotheby's has a duty to disclose information concerning any economic interest it has in property it puts at auction, yet fails to make such disclosures.

69. Sotheby's engaged in its deceptive practices in order to induce plaintiff and the other Class members to purchase auctioned property at inflated prices.

70. Plaintiff and the other Class members are entitled to a presumption of reliance based upon Sotheby's nondisclosures in connection with the auctions of the auctioned property.

71. Had plaintiff and the other Class members, as well as other potential purchasers of the auctioned property, known that Sotheby's had an economic interest in the auctioned property, plaintiff and the other Class members would have been able to purchase the auctioned property for lower prices than actually paid.

72. As a direct and proximate result of defendant's fraudulent conduct, plaintiff and the other Class members have been damaged in an amount that will be proven at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

///

///

///

209636_1.DOC                                        -14-

# PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter judgment against Sotheby's for:

    (a)    A preliminary and permanent injunction requiring disclosure by Sotheby's, in its auction catalogs, of information concerning all economic interests Sotheby's holds in any auctioned property other than disclosed fees and/or buyer commissions;

    (b)    A preliminary and permanent injunction requiring disclosure by Sotheby's, in its auction catalogs, of the identities of all counter-parties whose indebtedness to Sotheby's has resulted in an economic interest being held by Sotheby's in the auctioned property;

    (c)    Disgorgement to plaintiff and the other Class members of a sum determined to reflect the premium received by Sotheby's for those property auctioned by Sotheby's during the Class Period for which Sotheby's concealed information concerning economic interests it held in the auctioned property, along with any increased buyers' fees Sotheby's obtained as a result of that premium;

    (d)    Compensatory damages for Sotheby's wrongful conduct in an amount to be determined at trial;

    (e)    Punitive damages for Sotheby's wrongful conduct in an amount to be determined at trial;

    (f)    Treble damages pursuant to N.Y. Gen. Bus. Law § 349;

    (g)    Costs of this action, including reasonable attorney's fees;

///

///

///

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

209636_1.DOC

1    (h)    Any applicable and appropriate pre- and post-judgment interest; and

2    (i)    Such other and further relief as the Court deems just and proper.

3

4    Dated:  Los Angeles, California          Respectfully submitted,
                September 30, 2008

5                                             **DREIER STEIN KAHAN**
                                              **BROWNE WOODS GEORGE LLP**

6

7

8    By: _____
                Eric M. George
9               2121 Avenue of the Stars, 24th Floor
                Century City, CA 90067
10              Telephone: (310) 274-7100
                Facsimile: (310) 275-5697

11                                            **DREIER LLP**
                                              Lee A. Weiss
12                                            499 Park Avenue
                                              New York, NY 10022
13                                            Telephone: (212) 328-6100
                                              Facsimile: (212) 328-6101

14                                            Attorneys for Plaintiff Halsey Minor

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

209550_1.DOC

16